IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bilal Al-Haqq, | ) | Case No. 2:24-cv-00163-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ms. June Smith, Nurse Harrigan, Nurse Bonnie, Mr. Smith, Ms. George, Ms. Robertson, Mr. Chaplin, Ms. Mabe, Ms. Fair, Ms. Rose, Mr. Burnell, Mr. McCoy, Mr. Mims, Ms. May, Nurse Hayward, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court upon Defendants' motion for summary judgment and Plaintiff's motion for summary judgment. ECF Nos. 30, 33. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Mary Gordon Baker for pre-trial proceedings and a Report and Recommendation ("Report"). On July 15, 2025, the Magistrate Judge issued an Order and Report recommending that Defendants' motion be granted, recommending that Plaintiff's motion be denied, and ruling on certain motions filed by Plaintiff. ECF No. 42. Plaintiff filed objections to the Report. ECF No. 47.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The

Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## **DISCUSSION**

As an initial matter, the Court finds that the Magistrate Judge provides a thorough recitation of the relevant facts and the applicable law, which the Court incorporates by reference. The Court further adopts the Magistrate Judge's construction of which claims are included in this case and which claims are included in Plaintiff's other cases. This action mainly concerns events at Manning Correctional Institution ("Manning CI") between October 2022 and August 2023. Briefly, Plaintiff alleges violations of the First Amendment, the Fifth Amendment, the Eighth Amendment, and the Fourteenth Amendment.[1] He further alleges supervisory liability and requests damages and injunctive relief. Plaintiff's objections are mostly in the form of general objections or legal

---

[1] He also generally alleges a violation of his Fourth Amendment rights. The Court specifically adopts the Magistrate Judge's footnote 7 on page 12 of the Report in which she discusses Plaintiff's failure to plausibly allege a violation of his Fourth Amendment rights.

2

conclusions.  However, as Plaintiff filed objections, the Court's review has been de novo.  The Court notes that Plaintiff filed a verified complaint; none of Plaintiff's subsequent filings have been verified.  The Court has so considered the evidence available in the record.

***Defendants Hayward, Mims, and May***

The Magistrate Judge determined that Defendants Hayward, Mims, and May should be dismissed from this action because Plaintiff failed to allege that they personally violated his constitutional rights.  In his objections, Plaintiff generally states that Defendant Mims retaliated against him and was deliberately indifferent to his serious medical needs.  ECF No. 47 at 5.  He also states that he "has shown how each Defendant was personally involved in his constitutional violations . . . ."  *Id.* at 8.  The Court will analyze Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference to serious medical needs claims below.  The Court notes that Plaintiff's belated attempts to now allege specific claims as to Defendant Mims are insufficient; however, as noted below, these claims are subject to summary judgment in any event.  Accordingly, the Court agrees with the Magistrate Judge that these Defendants are entitled to dismissal.[2]

---

[2] The Magistrate Judge recommends, to the extent Plaintiff intends to name them as Defendants, dismissal of the South Carolina Department of Corrections ("SCDC") and Manning CI because they are not "persons" for purposes of § 1983 and because claims against them are barred by the Eleventh Amendment.  The Magistrate Judge further notes that Plaintiff does not allege any claims against these Defendants, they have not been served, and they have not appeared in this case.  Plaintiff has not specifically objected to this portion of the Report; nevertheless, the Court has conducted a de novo review.  Upon such review, the Court agrees with the Magistrate Judge's recommendation.  The Court notes that, because these entities have not appeared in this action, they do not join in the

3

***Eleventh Amendment Immunity***

The Magistrate Judge recommends finding Defendants are entitled to Eleventh Amendment immunity. Upon review, the Court agrees that Defendants are entitled to Eleventh Amendment immunity for claims for damages against them in their official capacities.

***First Amendment Claims***

Plaintiff alleges that he was retaliated against in the following ways: being transferred; Defendants Chaplin and McCoy allowed his property to be taken by other inmates while he was in the hospital; Defendant Mabe refused to file a grievance about Plaintiff's strokes and would not return his Step 2 grievance regarding his lost property; and Defendants Chaplin, Fair, and Rose falsified charges against Plaintiff. The Magistrate Judge recommends granting summary judgment as to Plaintiff's First Amendment claims. In his objections, Plaintiff asserts that he was transferred by Defendant Burnell in retaliation for exercising his First Amendment rights. ECF No. 47 at 4. He states that he was sent to Broad River Correctional Institution ("BRCI") to "cause him harm and in retaliation." *Id.* at 4–5. With respect to his grievances, he contends that Defendant Mabe violated his constitutional rights by refusing to file and process grievances. *Id.* at 6.

---

motion for summary judgment. As it has no effect on the outcome of the case, the Court will continue to refer to "Defendants" throughout this order and not specify that SCDC and Manning CI have not joined in the relevant arguments.

To state a plausible First Amendment retaliation claim, Plaintiff must allege that: (1) he engaged in protected First Amendment activity, (2) Defendants took an action that adversely affected his First Amendment rights, and (3) a causal relationship exists between his protected activity and the Defendants' conduct. *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (referencing *Martin v. Duffy (Martin II)*, 977 F.3d 294, 299 (4th Cir. 2020)). As noted by the Magistrate Judge, filing a grievance is protected activity, and it is undisputed that Plaintiff filed several grievances.

With respect to Plaintiff's allegation that he was transferred in retaliation for filing grievances, the Court notes that Plaintiff has also alleged that he was transferred as a result of an assault upon him. ECF No. 1 at 29. Moreover, as explained in more detail by the Magistrate Judge, Plaintiff cannot show that the transfer to Evans Correctional Institution was an adverse action. Indeed, Plaintiff focuses most of his attention on his transfer to BRCI; however, he has not alleged in his underlying filings or in the objections that Defendant Burnell is responsible for his transfer to BRCI. Accordingly, upon review, summary judgment is granted as to this claim.[3]

With respect to allegations that Defendants Chaplin and McCoy retaliated against Plaintiff by allowing other inmates to take his belongings, there is nothing in the record or

---

[3] The Magistrate Judge notes in a footnote that "[t]o the extent Plaintiff attempts to bring a retaliation claim against Defendant George based on his time in a 'single isolation cell,' any such claim fails because Plaintiff does not allege that Defendant George was responsible for the decision to place him there." ECF No. 42 at 19 n.10. Plaintiff has not specifically objected to this portion of the Report. Nevertheless, the Court has conducted a de novo review. Upon such review, the Court agrees with the recommendation of the Magistrate Judge.

5

Plaintiff's allegations demonstrating that these Defendants allowed his property to be taken in retaliation for protected activity. Accordingly, summary judgment is granted as to this claim.[4]

As to Plaintiff's claim that Defendant Mabe violated his First Amendment rights by refusing to process his grievances, Plaintiff has not alleged any causal connection between the protected activity and Defendant Mabe's conduct. Accordingly, summary judgment is appropriate with respect to this claim.[5]

***Fifth Amendment Claims***

Plaintiff alleges his Fifth Amendment rights were violated when Defendants Chaplin and McCoy allowed other inmates to take his property when he was in the hospital. He also references Defendants Mabe and Burnell with respect to this claim. As explained in more detail by the Magistrate Judge, Plaintiff cannot state a Fifth Amendment claim with respect to the distribution of his personal property. Accordingly, summary judgment is granted as to this claim.

---

[4] Plaintiff's allegations with respect to the taking of his personal property are addressed again below.

[5] Further, as noted by the Magistrate Judge, to the extent Plaintiff alleges that Defendant Mabe denied him access to the grievance process as a whole, he does not have a constitutional right to a grievance process. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure.").

***Eighth Amendment Claims***

Plaintiff brings Eighth Amendment claims against Defendants June Smith, Harrigan, Bonnie, Dr. Smith, George, and Robertson. He contends that the these Defendants failed to provide him with adequate care by delaying his blood pressure medication prescription, which caused him to experience nausea, vomiting, and strokes. The Magistrate Judge further notes that Plaintiff may be alleging Eighth Amendment claims based upon his cell assignment in the Wateree Down at BRCI and medical care he received at BRCI. She recommends granting summary judgment as to this claim.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A deliberate indifference claim has both an objective and subjective component. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "That is, the plaintiff must demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id*. (citing *Estelle*, 429 U.S. at 104). The subjective component of a deliberate indifference claim has two subparts: "a plaintiff must show the prison official (1) had actual knowledge of the risk of harm to the inmate and (2) recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (internal quotation marks omitted).

In his objections, Plaintiff states that Dr. Sunday and "several other treating physicians at PRISMA stated to the Plaintiff that he had six (6) strokes and that his heart

7

stopped beating because his blood pressure meds had been taken away." ECF No. 47 at 2. He therefore objects to any implication that the delay in access to his blood pressure medication did not cause his strokes. He contends that Defendants June Smith and Harrigan delayed giving him his blood pressure medication by months. *Id.* at 3. He states that he requested his blood pressure medication twice before he suffered strokes and that Defendants June Smith, Harrigan, George, Dr. Smith, and Bonnie were deliberately indifferent to his serious medical needs. *Id.* at 4, 5, 10–12. He states that Defendant Rose held him by his waist while Defendant Fair took away his walker. *Id.* at 7. He asserts that the Magistrate Judge is not qualified to make decisions regarding adequate medical care. *Id.* He further asserts that he was nauseas for days prior to his strokes. *Id.* at 12.

With respect to the delay in providing Plaintiff his blood pressure medication, the Court specifically incorporates the Magistrate Judge's thorough and detailed recitation of Plaintiff's medical history including his medical visits in the approximately two months between the time he requested his blood pressure medication and when he received it. ECF No. 42 at 27–28. The Magistrate Judge notes that Plaintiff cannot establish that the delay in receiving his blood pressure medication resulted in substantial harm. Upon review, the Court agrees. As explained in more detail in the Report, the evidence in the record demonstrates that the cause and exact timing of Plaintiff's strokes is unknown. Moreover, Plaintiff filed a Step 1 grievance weeks before his transfer to Manning CI stating that he had suffered strokes. There is also evidence in the record that his nausea and vomiting was the result of a gastrointestinal issue for which he was treated. Finally, as explained in more detail by the Magistrate Judge, the record demonstrates that Plaintiff

8

received constitutionally adequate care. He was seen several times by SCDC medical staff and by outside providers when necessary. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action.). Accordingly, summary judgment is granted to the claims against these Defendants.

With respect to any claim related to Plaintiff's placement in a cell at BRCI or the medical care he received at BRCI, Plaintiff has not sufficiently alleged that any Defendant in this action was responsible for his placement in that cell or he medical care or lack thereof at BRCI.[6]

In a footnote, the Magistrate Judge briefly discusses a possible claim based upon deliberate indifference to serious medical needs during the nine days Plaintiff was housed in isolation. ECF No. 42 at 31 n.17. In his objections, Plaintiff asserts that, while in isolation, he was recovering from strokes and he fell and hurt himself. ECF No. 47 at 8. As explained in more detail by the Magistrate Judge, Plaintiff was seen by medical staff approximately six times during his time in isolation. Thus, as Plaintiff has demonstrated

---

[6] Further, Plaintiff's medical care at BRCI is the subject of other lawsuits presently before the Court. In his objections, Plaintiff states that he was placed in an abandoned cell covered in feces and blood with no power to plug in his heart monitor and with bugs and roaches. ECF No. 47 at 4. He further states that he was placed with a dangerous prisoner as a roommate. *Id.* Those claims are specifically addressed in *Al-Haqq v. Mims*, 2:24-cv-01899-DCC.

no adverse effect from this time and there is evidence Plaintiff was treated by medical staff several times during these nine days, summary judgment is granted as to this claim.[7]

***Fourteenth Amendment Claims***

Plaintiff brings Fourteenth Amendment claims against Defendants Chaplin, McCoy, Fair, and Rose. As to Defendants Chaplin and McCoy, Plaintiff contends that they unconstitutionally allowed other inmates to take his belongings. With respect to Defendants Chaplin, Fair, and Rose, Plaintiff alleges that they brought a false charge against him. The Magistrate Judge notes that Plaintiff may be bringing a conditions of confinement claim based on being housed in isolation. She recommends granting summary judgment as to these claims. In his objections, Plaintiff asserts that Defendants Chaplin and McCoy gave away his property, some of which he has never recovered. ECF No. 47 at 4. He contends that he was not provided with property slips showing that he received his property back. *Id.* at 6. With respect to his disciplinary charge, Plaintiff asserts that he was found guilty and sentenced in a "kangaroo court" and that Defendant Fair told Defendant Burnell that nothing was found in his cell. *Id.* at 8.

With respect to the claim that his property was unconstitutionally dispersed, this claim fails because Plaintiff has access to a post-deprivation remedy in that he may make a claim pursuant to the South Carolina Tort Claims Act. *Harrison v. Phyall*, No. 9:23-cv-

---

[7] The Court notes that the Magistrate Judge also recommends granting summary judgment as to Plaintiff's Eighth Amendment claims against non-medical Defendants Fair, Rose, and Burnell. ECF No. 42 at 25 n.16. The Court has reviewed this portion of the Report de novo; upon such review, the Court agrees with the Magistrate Judge's recommendation.

03621-RMG-MHC, 2024 WL 3503035, at *3 (D.S.C. July 2, 2024) *adopted*, 2024 WL 3498849 (D.S.C. July 22, 2024) ("[A] claim of intentional deprivation of property by a prison official does not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy."); *Mora v. City of Gaithersburg*, 519 F.3d 216, 231 (4th Cir. 2008) (holding that state courts are available for property claims and the state process is constitutionally adequate). Accordingly, summary judgment is granted as to this claim.

With respect to Plaintiff's claim that his Fourteenth Amendment rights have been violated by the filing of a false disciplinary charge against him, the Court agrees with the Magistrate Judge that this claim fails as a matter of law. The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. *See Hunter v. Champagne*, No. 8:07-cv-910-CMC-BHH, 2008 WL 382757, at *4 (D.S.C. Feb. 11, 2008). The evidence in the record shows that Plaintiff was charged on June 14, 2023; he was notified of a hearing on the charge on June 26, 2023; and the hearing was held on July 6, 2023. At the hearing, evidence was presented, and Plaintiff was found guilty resulting in the restriction of his canteen, telephone, and visitation privileges. As explained in more detail by the Magistrate Judge, there is no evidence in the record that the charge against Plaintiff was false, and the evidence does show that he was given an opportunity to attend

11

a hearing on his charge and challenge the evidence against him.[8]  Therefore, upon review, the Court grants the motion for summary judgment as to this claim.[9]

As to any conditions of confinement claims related to being placed in isolation, there is no constitutionally protected liberty interest in avoiding placement in segregation or restricted housing.  *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  Therefore, as explained in more detail by the Magistrate Judge, Plaintiff must identify a state-created liberty interest in avoiding confinement in an "isolation single cell."  To succeed, he must show that there is "a basis for an interest or expectation in state regulations" for avoiding such confinement and demonstrate that the conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Prieto v. Clarke*, 780 F.3d 245, 249 (4th. Cir. 2015).  In determining whether the conditions of confinement to which the prisoner was transferred were "harsh and atypical," the Court considers three factors: "(1) the magnitude of confinement restriction; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative

---

[8] The Court has further reviewed the Magistrate Judge's analysis of whether Plaintiff was deprived of a protected liberty interest and agrees that he was not.

[9] In footnote 22 at the bottom of page 36, the Magistrate Judge notes that Plaintiff may be bringing a claim that the shakedown was retaliatory and recommends that summary judgment be granted as to any such claim.  In his objections, Plaintiff asserts that Defendant Fair told Defendant Burnell that they didn't find anything during the "retaliatory shakedown" and that Defendant Fair was subsequently terminated.  ECF No. 47 at 3.  As noted by the Magistrate Judge, "courts within the Fourth Circuit have found that a routine cell search, without more, is not sufficiently adverse to satisfy the second element of a retaliation claim."  *Manteen v. Collins*, No. 7:19-cv-00620, 2021 WL 4432517, at *4 (W.D. Va. Sept. 27, 2021).  Accordingly, summary judgment is granted as to this claim.

segregation had any collateral consequences on the inmate's sentence." *Id*. at 530. Here, there is no indication that Plaintiff's placement in isolation imposed an atypical or significant hardship upon him.  As explained in the Report, there is no evidence that Plaintiff experienced any other restrictions beyond being alone during this time, he was in isolation for no more than a few weeks, and there is no evidence of any collateral consequences to Plaintiff's sentencing resulting from this time.  Accordingly, summary judgment is granted as to this claim.[10]

***Supervisory Liability***

The Magistrate Judge found that any supervisory liability claims by Plaintiff fail. Plaintiff may be objecting to this portion of the Report with respect to Defendant June Smith.  ECF No. 47 at 8–9.  He contends she failed to "properly monitor and supervise her subordinates."  *Id.* at 8.  A supervisor can be liable for an employee's misconduct where "(1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was

---

[10] At various points in his objections, Plaintiff requests that he and Defendants be subjected to a polygraph test and alleges that Defendants have attempted to evade justice by telling him to "sue the white girl" who he contends is Bernadette Roberson. ECF No. 47 at 2, 6, 9, 12.  He further states that Bernadette Roberson tried to place the blame on Defendant June Smith.  *Id.* at 9–10.  As to Plaintiff's request for polygraph testing, the Court can discern no reason to direct the parties to submit to such testing.  As to Plaintiff's claims that Defendants attempted to evade justice by telling him to sue Ms. Roberson, it is unclear what relief Plaintiff believes he is entitled to based on this allegation.  Defendants have been served and have participated in this litigation; there is no indication they have evaded justice.

so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) . . . there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).  As to June Smith, Plaintiff has provided no facts from which the Court could infer that she knew that a subordinate's conduct posed a risk of constitutional injury to Plaintiff and then responded with deliberate indifference or tacit authorization causing injury to Plaintiff. Moreover, Plaintiff has failed to establish any constitutional violation for which Defendants could be liable. Accordingly, summary judgment is granted as to this claim.

### *Qualified Immunity*

The Magistrate Judge recommends finding that Defendants are entitled to qualified immunity.  As the Court has found that Plaintiff failed to establish a genuine issue of material fact with respect to any constitutional violations, the Court agrees that Defendants are entitled to qualified immunity for claims for damages made against them in their individual capacities.  *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

### *Injunctive Relief*

Plaintiff requests a preliminary and permanent injunction "ordering the Defendants . . . to remove the Plaintiff from [BRCI] Yard to the Kirkland Corr[ectional] Inst[itution] Infirmary in order that the Plaintiff can receive proper treatment and doctor ordered physical therapy, and to remove the Plaintiff from a life threatening situation, placing the Plaintiff's life and health at risk."  ECF No. 1 at 35.  The Magistrate Judge recommends that Plaintiff's request for injunctive relief be denied.  Plaintiff objects to the Magistrate

14

Judge's recommendation that he be denied the injunctive relief of transferring him for his safety and in order to receive physical therapy.  ECF No. 47 at 6.

As noted by the Magistrate Judge, there is no evidence that any of the named Defendants have the authority to transfer Plaintiff; accordingly, the *Ex Parte Young*, 209 U.S. 123, 155–56 (1908), exception to Eleventh Amendment immunity does not apply in this case.  Moreover, Plaintiff's request for injunctive relief is connected to his allegations regarding inadequate medical care at BRCI and is more appropriately addressed in conjunction with those allegations.  See *Al-Haqq v. Mims*, 2:24-cv-01899-DCC.  Accordingly, Plaintiff's request for injunctive relief is denied.

***Appointment of Counsel***

In his objections, Plaintiff requests that counsel be appointed to represent him in this matter "due to his current medical condition as a result of diabetes."  ECF No. 47 at 1.  There is no constitutional right to counsel in a civil case.  While a court has discretion to request appointment of counsel for an indigent in a civil action, such appointment "should be allowed only in exceptional cases." 28 U.S.C. 1915(e)(1); *Smith v. Blackledge*, 451 F.2d 1201, 1203 (4th Cir. 1975); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).  A finding of exceptional circumstances turns on the type and complexity of the case, and the abilities of the individual bringing it.  *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984), *abrogated on other grounds by, Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).  If it is apparent that a pro se litigant "has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Whisenant*, 739 F.2d at 163.  Recently, in a § 1983 action, the Fourth Circuit explained that a district court must

15

conduct a fact specific inquiry in analyzing whether a case presents exceptional circumstances: (1) whether the pro se litigant has a colorable claim, and (2) considering the claim's objective complexity and the pro se litigant's subjective abilities, whether the plaintiff "lacks the capacity to present it." *Jenkins v. Woodard,* 109 F.4th 242 (4th Cir. July 31, 2024) (published).  The Fourth Circuit made clear that a district court's failure to assess "(1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities" is legal error.  *Id*.  Here, Plaintiff presented colorable claims, as evidenced by the fact that these claims withstood initial review. However, the Court finds that the claims presented were not particularly difficult or overly complex and that Plaintiff has ably presented his claims.  Further, there is no indication that Plaintiff lacks the skill or capacity to present his claims.  While Plaintiff asserts that he has medical issues stemming from diabetes, he has pointed to no specific condition that prevents him from presenting his claims.  Accordingly, the request is denied.

***Appeal of Magistrate Judge's Order on Sanctions***

Plaintiff may be appealing the Magistrate Judge order denying his motion for sanctions.  ECF No. 47 at 12.  The Magistrate Judge's order is non-dispositive. Federal Rule of Civil Procedure 72(a) permits a party to submit objections/appeals to a magistrate judge's ruling on non-dispositive matters.  Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law."). The objections/appeal must be filed and served within 14 days after being served

16

a copy of the non-dispositive order. *Id*. Further, the Court's review is governed by the clearly erroneous or contrary to law standard of review. Id. Only if the decision is clearly erroneous or contrary to law may the district judge modify or set aside any portion of the decision. *Id*. A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948). The Court has reviewed the Magistrate Judge's order and Plaintiff's appeal. Upon such review, the Court finds that the Magistrate Judge's order is neither clearly erroneous nor contrary to law. Accordingly, the appeal is denied.[11]

## CONCLUSION

Based on the foregoing, the Court adopts the Magistrate Judge's Report. Defendants' motion for summary judgment [30] is **GRANTED** and Plaintiff's motion for summary judgment [33] is **DENIED**. The decision of the Magistrate Judge [42] is **AFFIRMED**. Plaintiff's request for appointment of counsel [47] is **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 16, 2025
Spartanburg, South Carolina

---

[11] Plaintiff may also be appealing the Magistrate Judge's ruling on his request for appointment of counsel. ECF No. 47 at 6. As the Court has conducted its own analysis of Plaintiff's request for appointment of counsel, the undersigned declines to repeat himself here. However, the Court has reviewed the Magistrate Judge's most recent order denying counsel and finds it was neither clearly erroneous nor contrary to law. *See* ECF No. 25.